2181 People v. Michael Harper May it please the Court, Karen Weiberg here representing Michael Harper. Good morning, Counsel. Good morning, Your Honors. Judy DeAngelis on behalf of the people of the State of Illinois. Good morning, Counsel. Good morning. Now if you're ready. Thank you. And I would like to reserve five minutes of my time for rebuttal. Michael Harper filed a successive post-conviction petition alleging actual innocence. That petition was advanced to the second stage, where it was dismissed on the State's motion. Therefore, the basic question at issue here is whether that petition, taking all well-pleaded facts within the petition and the supporting materials as true, put forward a substantial showing of actual innocence. Because we believe it did, we are asking this Court to reverse the circuit court's order dismissing that petition and to remand this case for a third stage evidentiary hearing. Now Michael Harper supported his petition with the affidavits of two witnesses along with a transcript of some testimony from another proceeding. The affidavit and testimony of James Bell, in short, stated that he, and not Michael Harper, had set the fire in Magic Video, which ultimately claimed the lives of two people in the restaurant next door to the store. Bell stated that he had set the fire, he did not then and does not now know Michael Harper. And he explained that his reason for setting the fire was based on the fact that he believed Arthur Brown was the owner of that video store, and Arthur Brown owed him a substantial amount of money for drugs. Therefore, when Mr. Bell was unable to get his money from Brown, he burned the store in revenge. Now, in and of itself, the affidavit and the former testimony of James Bell is sufficient at the second stage to make a substantial showing of actual innocence. Mr. Bell's confession is unrebutted by the record, consistent with the physical evidence, and, if believed, taken as credible, completely exonerates Michael Harper. Now, I'd like to get to just a minute or spend a little bit of time on this notion that his confession is unrebutted by the record. The physical evidence in this case is actually completely consistent with James Bell's confession. James Bell stated he used a gas can to start the fire. He went out the back door. He dropped the gas can. A gas can was found in the alley or breezeway behind the store. James Bell stated he started the fire by soaking a mattress in gasoline toward the back of the store and then igniting that mattress. Expert witnesses testified that was indeed how the fire started. James Bell testified, or James Bell stated and testified, that he pulled the burglar bars in the back of the store, that he bent them up so he could kick the door open and get inside the store. But those things are also consistent with the original confession, too, aren't they? Many of those things are consistent with the original confession, yes, which means that as far as the physical evidence is concerned, first of all, at this stage, I believe that we have to accept James Bell's confession on its face unless it is rebutted by the record. And my point right here, most importantly, is that it is not rebutted by the record, that none of these fact rebut his confession. If they are, in fact, equally consistent with both Mr. Bell and Mr. Harper's confessions, then we also have to factor in the fact that, A, Mr. Harper has alleged that his confession was, in fact, coerced and essentially written by police. And, B, there are other matters that we can take into account in terms of judging between those two. But most importantly, that's really a question of credibility and fact that needs to be put off probably to a jury and at least until a third stage evidentiary hearing when we can have witnesses testify and make a proper judgment about witness credibility. Is it a question of credibility or a question of reliability? Well, Your Honor, reliability in this context, really that's getting back to the question of whether this is rebutted by the record. Does the record demonstrate that Bell's confession is false? If the record demonstrated that Bell's confession was false, clearly it would be unreliable and we would have to reject it as being rebutted by the record. However, in this case, there is no evidence that actually rebuts Mr. Bell's confession. Mr. Bell's confession fits the evidence as it stands. Therefore, at this stage, the only way to discount Mr. Bell's confession would be to essentially discount it as a matter of believability, and that is precisely what the Supreme Court tells us we cannot do prior to an evidentiary hearing in post-conviction proceedings. So I would say that in point of fact, Mr. Bell's confession is entirely reliable insofar as it's not rebutted by the record. How about the fact that I believe he says he left the door open or the door was somewhat open, which is inconsistent with the actual way the fire proceeded? The backdraft? The backdraft, yes. Well, first of all, Mr. Bell actually does not say whether he left the door open or closed. This is one of the things that perhaps could be addressed in an evidentiary hearing where questioning could reveal the answer to that. What Mr. Bell says is he kicked the door open and then he left out the back door. Now, there is not a single shred of testimony or evidence anywhere in the record suggesting that a door that had been kicked open, and we don't know what state the door was in. Nobody testified to getting there and seeing the state the door was in. There's no evidence, no testimony, no expert exclamations of any kind expressing that a door which had simply been shut after being kicked open could not create a reasonable enough seal that you could have a backdraft, which doesn't require an airtight seal. It requires that there be a minimal amount of oxygen reaching a point of the fire such that heat builds up without oxygen so that when oxygen is introduced, you get an explosion, which could happen, as far as all the evidence we have right now shows, that could happen just as well if a door had been kicked open and shut than if a door were shut and locked. We just don't know anything about what the state of the door was. No witnesses testified to that. And Bell didn't state, did I splinter the door? Did the latch just break? We just don't know. So it's entirely possible that that door was simply shut and probably not latched but still closed, such to create a sufficient seal to create a backdraft. Is there anything in the pending Coase conviction petition where our defendant actually addresses the coercion issue? In the president's own confession. Well, he does submit his own affidavit, yes. And in his affidavit, he does. His attorney argued at trial that he did not testify. In his affidavit, he does state that in point of fact his confession was coerced, that police told him that if he did not make the statement implicating himself, they would charge his mother with the offense, who was the co-owner of the video store, and therefore it was at least reasonable for him to believe that she could be at some risk, as they were both owners of the same store. And on that point, there are some interesting facts there. Detective, I believe it's Cutts, forgive me if I mispronounce it, did testify that in fact he did bring Michael Harper's mother to the police station, that he told Michael Harper his mother was there. So Harper was aware his mother was at the police station. We know that much. But Cutts also testified that she left after only about 15 minutes, saying that she had other things she had to do. I think one of the points, if I'm not mistaken, that you've made, is that the confession is a little bit unbelievable on its face, because he would not in fact have gotten any insurance proceeds. Right, the motive. Even though he said that was the motive. Right, the motivation. But now you're telling me the mother was the one who owned the store. No, they both owned the store. It was a co-owned store. It was both Mr. Harper and his mother who co-owned the store. Now motivation is really an important factor looking at these two confessions, because Michael Harper's entire supposed motivation for this offense was to gain insurance proceeds. He wanted more money. He wasn't making enough off the store, so he was going to burn the store, the tapes, and collect insurance. The biggest problem with this is that there's never been any evidence that any insurance ever existed. Detective Cutts testified at trial that, as I recall, this is Edwards, where he wasn't concerned about insurance. He didn't investigate it. The police never found any evidence of insurance. There's no evidence that anyone has ever received assent for it or that there was ever a policy anyone ever could have received money for. But what was put forward at the trial as the motive for the fire? The trial, the motive for the trial, pardon me, the motive for the fire put forward at trial was the insurance. And counsel did address at trial the absence of evidence on it, but in the absence of another believable suspect, the jury went ahead and convicted him. Let me ask you a different question. How do you respond to the state's argument that Hingston's affidavit was not newly discovered evidence? Well, Your Honor, I believe that Mr. Hingston's affidavit was newly discovered evidence, and I think it's important to look at this, among other ways, from simply a matter of practicality. Mr. Hingston did testify at the first trial. However, Mr. Hingston has admitted in his affidavit that, A, he testified falsely, and B, that he testified falsely because he believed he was in danger of being fined and losing his job. Now, under those circumstances, sure, counsel had an opportunity to cross-examine Mr. Hingston at trial, but if he asks him the questions and Mr. Hingston lies, counsel has no means by which to somehow compel him. Hingston didn't testify at the second trial, did he? No, he testified at the first trial, and his testimony was then read into the record at the second trial. He was unavailable. Therefore, there never was a second opportunity to cross-examine. There never was an opportunity to do further investigation and somehow perhaps come up with some new question that maybe Mr. Hingston would answer truthfully. Bottom line, if a witness chooses to answer falsely, counsel can't compel him to answer truthfully. Therefore, there is no way through due diligence that Michael Harper could have acquired Mr. Hingston's truthful testimony prior to the signing of the affidavit. This may be a little unfair, and I apologize if it's the case, but why do these post-conviction petitions take so long to come to a decision? The pro se petition was filed in 2003. Defense counsel filed an amended petition in 2009, and then it was dismissed in 2010. I mean, it doesn't help the truth-seeking process when things are delayed. Well, I certainly agree with you on that point. It does not help the truth-seeking process when it takes six or seven years to dispose of a single post-conviction petition. However, Michael Harper did file his pro se petition in 2003. He went through more than one counsel during post-conviction proceedings, and it was counsel who, presumably because she was continuing to investigate, and I believe also may have had some health issues in the course of the trial or the course of proceedings, kept requesting continuances. And then, of course, after they did finally file their petition in 2009, the state took one or, I believe, two continuances of their own. I can't tell you why it always takes this long. It seems to be a surprising trend in post-conviction proceedings that it takes a long time for a petition to get from the pro se initial submission to actual completion. Most of that delay seems to take place after counsel is appointed, and I don't know if that has to do with the overworked nature of counsel at that stage or simply the investigation that's necessary in some cases. But I certainly agree with you that it takes a long time. And Mr. Hengstrom is now deceased. I believe so, yes. Let me ask you another. You know, the conclusive character element of a claim of actual innocence is really important. Explain to me, in the best way you can, how do you think Hengstrom's affidavit and Bell's late confession, for lack of a better term, satisfies that element? Well, first of all, Your Honor, I think that it's important to remember the stage of proceedings we're at. As we are at the second stage, we're not making factual determinations and we're not judging credibility. We're taking the pleadings as they are. Now, taken on its own, James Bell's affidavit and his testimony is quite conclusive. He's very clear. He set the fire. He did not know Mr. Harper. He was there. Mr. Harper was not. That in and of itself is very conclusive. But then when you add on, particularly in terms of the way it impacts Mr. Harper's own confession, when you add on the affidavit from Cecil Hengstrom, which states that police officers and detectives who were involved in the investigation of this case came to him, coerced him into making statements that were false by threatening to fine and possibly get him fired. When you take that and when you are aware that there are, or there is at least allegations that police officers involved in this investigation were in fact coercing false statements out of at least one witness, that makes it far more plausible and far more believable for a jury that Mr. Harper's confession was in fact the result of coercion, especially when you put it together with the absence of motive, the fact that all of the evidence that supposedly corroborates Mr. Harper's confession,  the one piece of evidence that the police didn't have, the new thing that they could have gotten from the confession that could have corroborated that and confirmed it, was the insurance policy. But there has never been any evidence of the insurance policy. But does there have to be an actual insurance policy to be the same motive? Well, I would think so. I don't know how else you would collect funds. Well, the defendant and his mother didn't own the building. No, they did not own the building. They just owned the property, or the store. I mean, if he anticipated the possibility of insurance proceeds? Well, I mean, I think, respectfully, and correct me if I'm wrong, I would think that he would have to have an insurance policy in order to anticipate proceeds. I mean, I would not think that he would assume that there was some insurance there. As one of the co-owners of the store, he's presumably aware of what protections they have and what protections they don't have for their investment. And another thing that's interesting to note about this whole insurance motivation is the fact that all of the testimony we have on the record, all of the evidence says that the store wasn't in any financial trouble. They were current on their rent. The owner of the building was not aware of any problems they were having. There was no sign that the store was about to close. So for an individual who had no prior criminal record, and certainly no history of violent crime, to decide to burn down his own business for proceeds from an insurance policy that, as far as we can tell, does not exist, when he wasn't having any financial problems that we can find, is, in my opinion, a little unbelievable. On the other hand, however, we have James Bell. But what about the insurance proceeds if there was an intentional fire, though? You can't collect. Well, certainly no. But, again, there's no evidence that there was even an insurance policy. So that even if we assumed for a moment that this was his motivation, we assumed that he set this fire, even if he convinced everyone that it wasn't an arson, there's no evidence that there was ever an insurance policy he could have collected from in the first place. There essentially would be no motive. Without the existence of some kind of policy, he simply has nothing to gain, other than burning down his own store, which doesn't appear to be a particularly compelling motive. Well, obviously it was compelling to a jury because that's why you're here. Well, somebody believed it. Oh, Your Honor, a jury did believe it. However, I would also suggest that a jury believed it in the absence of, A, a second believable suspect. And I would like to point out that, as far as motivation is concerned, James Bell's motivation makes a great deal more sense. James Bell is a violent criminal, convicted of numerous armed robberies, who said, yeah, this guy owed me money for drugs. He didn't pay. He owed me a lot of money. When you don't pay, something bad happens to you. So what did he do? He burned down the store. I would submit that an action like that, coming from an individual like the person James Bell was at that time, is far more believable than an otherwise seemingly law-abiding person deciding to burn down their own store in the absence of any sign that they needed the money and could get any money out of doing so. And so just on that factor right there, if we are going to judge these as a matter of credibility and a matter of believability, I think that on that point right there, James Bell's confession is significantly more believable. However, I also want to say that I don't think that's even a determination we need to make here. You need to wrap up. Oh, certainly. So I would just like to conclude by saying that I do believe that when taken on its face as true, as required under Coleman, Pitsenbarger, Rice, a number of cases, the confession of James Bell fully exonerates Michael Harper. Added to that, once again, taken as true at the second stage, the affidavit of Cecil Hingston makes far more believable the claim that Mr. Harper's confession was coerced and further increases the chance that a jury would, in fact, reach a different verdict. Based on those considerations, we would ask that this Court reverse the order dismissing Mr. Harper's petition at the second stage and remand this for a third stage evidentiary hearing. Thank you. Good morning again, Your Honors. May it please the Court. State your name again, Counsel. Judy DeAngelis, the people of the State of Illinois. Your Honors, defendants should not be allowed on an appeal from the denial of a fourth successive post-conviction petition to, for all practical purposes, use gamemanship to garner an evidentiary hearing. James Bell's testimony that defendant relies upon has already been determined by this division of this Court that his testimony was neither corroborated nor believable. This Court should not have to put blinders on. It should be able to not have to use scarce judicial resources in order to determine that defendant has not proven actual innocence. When this division issued a prior order in the case, was that based on the same paper trail of affidavits that we now have before us today? Your Honor, that is why we did not argue collateral estoppel, because it is different parties and such. But it's the same testimony. He is relying on the testimony that James Bell gave at Arthur Brown's trial. He is relying on the same set of facts that this Court found was, as I said, not corroborated, not believable, and the physical evidence in this case does, in fact, rebut James Bell's testimony and slash affidavit. I will be going through that, but one point I wanted to make is that we do disagree at this point. We believe that this Court can find that, as a matter of law, that this post-conviction, successive post-conviction petition should not have even been filed, and that under a culpable claim of innocence, defendant has failed to prove newly discovered evidence, which would allow this Court to even find, again, that the petition was properly filed. Regardless, even if we find that it is at second stage, defendant still has not made a substantial showing of actual innocence for various reasons. If you take, you know, basic principle, if we take James Bell's affidavit as true, then he started the fire. And if a jury believes that, then there would be a different outcome, wouldn't there? You do not have to take James Bell's affidavit and testimony as true because his testimony is rebutted by the record. And where is that? Where is the rebuttal? Specifically. Outline for me where the rebuttal is. Absolutely. As this appellate court found, again, based on the same testimony in Arthur Brown, a backdraft could not have occurred the way the fireman testified it did occur. If, in fact, James Bell had easily, as he said, kicked in the door, there would not have been a sufficient seal of the building to have caused the explosion that the fireman said had been caused. But your opponent just explained in my reading of the materials that there was no information about whether that door was open or it was closed. I don't remember that in the record. Are you saying that there is something in the record that explains the condition, whether the door was open or closed? Well, the condition that was sufficient for a backdraft was certainly explained. And, again, as this court found. I'm asking a real narrow question. A real narrow question of whether the door was, in fact, open or closed. They did not say that the back door was open or closed. They just had a very difficult time getting into the building. So you would assume if the back door was open that they would not have had a difficult time and there would not have been a backdraft. And if James Bell did what he said he did, then it would have been open. Common sense dictates. Let me ask you another question. A lot of this, as your opponent argues, is credibility. What is the harm in having a credibility hearing, having the third stage and allowing the credibility of this to be tested? Because as a matter of law, he is not deserving of an evidentiary hearing. We have to look at James Bell's affidavit. We have to see that James Bell, as was brought out at trial, was an experienced armed robber. He was not a drug dealer. He claimed that he was looking for money in a store and he said he went there. Are those the kind of credibility things that would be tested in a hearing? It's reliability that under People v. Edwards this court can examine here today without sending it back to a hearing. The one point I would like to bring out, the evidence in this case shows that Michael Harper talked to police officer Brown. As officer Brown stood and looked at the smoke that was coming out of the mortar, a fireman wasn't even at the scene at that point. And we can also not forget Sid Malone's testimony. That testimony went completely unimpeached. Sid Malone testified that he was almost run over by the Ford Bronco with license plate gas 403 as he tried to cross the street. Then he saw the Ford Bronco, the same Ford Bronco that Cecil Hingston saw, and I'll speak about Cecil Hingston. He saw that Ford Bronco parked in front of the video store and two men got out with a gas can in their hands. Did anybody identify the defendant though? No. The defendant was not identified, but the defendant gave a very detailed confession explaining his part in the arson and murder. And speaking again about Cecil Hingston, even though the defendant claims that he has an affidavit from him, you must look at that affidavit and see that the notary that allegedly notarized the affidavit in December 3, 2002, her name, she spells it Dob, and her seal says her last name is Dobbin. Cecil Hingston was not available for the second trial, and that was approximately seven or eight years before he wrote out this affidavit, and he is in fact dead at this point, we were told, in 2008 in Arthur Brown's co-defendant's trial. So we now have an affidavit from a person who is dead who allegedly recanted his very detailed testimony. He testified that he actually had a fight with the man at the gas station, that the man who went to get gas in the Ford Bronco, that defendant admitted was his Ford Bronco with license plate GAS403, that he wanted Cecil Hingston to put the gas in the gas can for him. And Cecil Hingston said, no, you have to do it yourself. And then the man decided to do it incorrectly somehow and spilled gas, and Cecil said, now you have to pay for that gas. There's no evidence of coercion. Defendant says that Cecil Hingston was somehow coerced. There's no evidence on this record that Cecil Hingston was coerced, or in fact that defendant was coerced. Didn't he say that in the affidavit that you say is unreliable? Didn't Hingston later say that? He said that he thought he'd be fined or maybe lose his job. In the affidavit, again, that was notarized by someone with a different last name. However, even if we take that as true, it's not coercion. We're not talking about any type of police brutality, and defendant has never raised on appeal ever that he was coerced into giving this confession. So how, under your theory, one affidavit is not true, but the other one is. How do you decide which one is true and which one isn't, since Hingston is now dead? You're saying that the affidavit in which he refutes his testimony or his first affidavit is not true, but the first one is. How do we make that determination from where we sit? There was only one affidavit. Cecil Hingston did testify at trial. He was subject to full cross-examination. If there was any possibility that he was coerced, defense attorney could have brought it out at that point. But again, he stated on direct and cross he gave very detailed facts regarding what happened that morning. And there's only one affidavit after that that was 12 years after the original trial in which he refuted what he said. Hingston was unavailable at the second trial, so there was no opportunity to cross-examine him then, right? Correct, but he was fully cross-examined at the first trial and his testimony was presented at the second trial, based on a reading of his prior testimony, correct. Ms. DeAngelis, let me distill this down. We have a procedure set forth in state law for a post-conviction process if someone claims an actual claim of innocence, which is what we're talking about. Exactly. We have someone who was convicted of arson, right, and murder. Murder. Okay. And we have someone else who has come forth with it. We have an affidavit from Mr. Bell, right? Correct. Who says, I'm the one who really did it, not Mr. Harper. Correct, and if I could make one point, too. This is also res judicata because defendant brought James Bell up back in 1997 and an order was issued by this court. There was no affidavit. There was no affidavit. Correct. Now he's finally been able to secure the affidavit. Whether it's true or not is not for us to determine. We have to construe it as true, don't we? But you can look at the reliability of it, as People v. Edwards states. And, again, I would still reiterate that we could be looking at this as a matter of law, that there was no culpable claim of innocence. And looking at this and the reliability. Answer Justice DeLort's question. And my question is, and you're doing fine, don't worry, distilling it down to the simple structure, okay, conviction, and what we have before us now is an affidavit from someone else saying, I'm the guy who did it, not Harper. If that doesn't get us through the door to an evidentiary hearing, what does? Well, the reason it would not get us through the door for an evidentiary hearing here is because this testimony and this affidavit has already been presented to 12 reasonable jurors who have determined that there was nothing in that testimony that would have allowed them to not convict Arthur Brown. Did Mr. Bell testify at the first trial? Mr. Brown did not, or excuse me, Mr. Bell testified at Arthur Brown's second trial. But not Harper's trial. Correct. Which was the jury that convicted. Correct. But this court can certainly take judicial notice of that. And, again, given the scarce resources we're looking at. You're saying that we can take notice of the fact that the jury that convicted, that heard Bell's testimony at Brown's trial and didn't believe him, that maybe the jury at Harper's trial wouldn't have believed him either? Is that what you're saying? Under the standard presented by People v. Edwards for claims of actual innocence, this court can look at Bell's affidavit. You can take judicial notice of what you stated in Arthur Brown's appeal. Two different cases, two different juries. Absolutely. And we should say that we assume that since one jury didn't believe it, the other one wouldn't have either. You still can't get rid of the fact that this court found his testimony to be uncorroborated and unbelievable based upon the same facts that were presented at the trial by the police officers and the firemen and the forensic evidence. It's the same facts. It's the same arson. It's the same murder. And our position would be that you can take judicial notice of that, and it must be remembered, again, that there are many, many pieces that have been refuted. And we would state that, Your Honors, based on, unless there's any other questions, based on our brief that was filed and the argument that we presented today, that defendant's conviction for murder and sentence should be affirmed. Thank you, Ms. DeAngelis. And you were within your time, so that's great. Mr. Weiber? Brief rebuttal, please. Thank you, Your Honor, and please, the Court. I would like to address just quickly some of these issues regarding Arthur Brown's proceedings. First of all, just as a matter of Supreme Court rule, this Court's order, this Court's Rule 23 order is simply not citable as precedent under any circumstances that are present in this case. That order is simply irrelevant to the present case. The Rule 23 order in the Harper? No, the Rule 23 order in Arthur Brown's case. It's simply not relevant to this case. Under Rule 23, it's not citable, and it doesn't apply. As far as Arthur Brown's new trial and the fact that a jury found him guilty, again, first of all, I would say that I believe we said in our brief, People v. Knight states that a petition can only be judged rebutted by the record, whereas rebutted by the record in the proceedings that are under appeal, not some other separate proceedings. This was a different case. It was a different defendant. But you brought that case into our proceedings by using the testimony of Mr. Bell in that case. Well, to be respectfully, I think, to be clear, what Michael Harper presented was simply the testimony from the third-stage evidentiary hearing that took place on Arthur Brown's post-conviction petition. And I would say that if we are looking at the proceedings in Arthur Brown's case as somehow determinative of what's happening here, Arthur Brown not only received a third-stage evidentiary hearing, he received an entire new trial. The court believed that this evidence was sufficient not only to gain us third stage, but to bring us all the way to a new trial. And the fact that even assuming that it was relevant, which we strongly maintain it's not, even assuming that it was, the fact that another jury ultimately disbelieved the defense in Brown is in no way conclusive, A, because this is the whole reason we give a new trial instead of simply exonerating the defendant after third stage. We recognize that there is a possibility that when all this new evidence is put before the trier of fact, that trier of fact will ultimately reach a decision that goes against the defendant's innocence. Nonetheless, at third stage, we can say this deserves a new trial. The fact finder should have an opportunity to determine which of these two scenarios, which are at least equally plausible, and we would argue that actually James Bell's confession is more plausible, but a jury, a finder of fact, should have the opportunity to sit down and hear all the evidence and make that determination. So which transcript? What proceedings? The transcripts that were submitted with Michael Harper's petition? Yes. That was testimony from Arthur Brown's evidentiary hearing on his post-conviction petition. And then Mr. Bell testified again? Mr. Bell did testify again at trial, yes. But that was not the testimony that was included with Michael Harper's petition. So that does, I do believe that is significant to an extent. And again, I don't think that this court would accept, and I don't think that the state would argue, that had Arthur Brown been found not guilty on his retrial, we could simply let Michael Harper go. The fact that the jury found one way in that case is not determinative of what a jury would determine in Michael Harper's case, and we wouldn't say that as a matter of collateral estoppel, well, let Arthur Brown go, we've got to let Michael Harper go now, too. He would still have to go through the post-conviction process, and he would still have to get a new trial, and he would still have to convince a new jury that he was innocent. So Arthur Brown's trial really does not control anything in this issue. I'd also like to address just briefly People v. Edwards, since that has been raised. And I would like to note that People v. Edwards, first of all, all that case answered was the question of what standard a first-stage petition needs to meet to get leave to file. We are past the first stage, we are at the second stage, which is a separate standard, it's a separate proceeding, and ultimately the standard that People v. Edwards did put forward was simply a reformulation of the Washington standard. It's the familiar standard that we've had for a long time. They cited Washington. And they also did cite cases like Pitts and Barger and Ortiz, which have maintained the same post-conviction structure we've had for a long time. So if there are no further questions, then we would respectfully ask this Court to reverse the order dismissing Michael Harper's petition and to remand this case for a third-stage evidentiary hearing. Thank you, counsel. Thank you, Steve. This case will be taken under advisement, and court is adjourned.